UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE:<br><br>DEREK J. PORTALUPPI,<br><br>    Debtor.<br><br>_____<br><br>WILLIAM HOLMES,<br><br>    Plaintiff,<br><br>    v.<br><br>DEREK J. PORTALUPPI,<br><br>    Defendant. | No. 3:13-cv-421 (MPS) |

## MEMORANDUM OF DECISION

William Holmes, the pro se creditor-appellant, commenced an adversary proceeding objecting to the entry of Mr. Portaluppi's discharge in bankruptcy under 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A). After a two-day trial, the Bankruptcy Court (Hon. Lorraine Weil) issued her decision overruling Mr. Holmes's objections and ordering that a Chapter 7 discharge enter in favor of Mr. Portaluppi. Mr. Holmes now appeals from that decision, challenging the Bankruptcy Court's findings that Mr. Portaluppi: (1) did not intentionally provide an obsolete address for Mr. Holmes on his bankruptcy petition to prevent Mr. Holmes from participating in the Trustee's Examination; (2) did not knowingly and fraudulently conceal the transfer of motor vehicles in the bankruptcy petition; and (3) did not fail to preserve adequate records concerning motor vehicles. Further, Mr. Holmes argues that the Bankruptcy Court erred in (4) finding that Mr. Portaluppi's counsel did not waive the attorney client privilege by

1

inadvertently disclosing a privileged e-mail and by (5) denying his request to have the Trustee audit or examine Mr. Portaluppi.  Because Mr. Holmes has failed to show that the first two findings – which are findings of fact – are clearly erroneous, and has failed to demonstrate that the Bankruptcy Court committed any legal error in making the third finding, the Court affirms those findings.  Further, the fourth and fifth findings are reviewable by this Court only for abuse of discretion, and Mr. Holmes has not established that the Bankruptcy Court abused its discretion in making these findings.  This appeal is therefore dismissed and judgment shall enter in favor of Mr. Portaluppi.  After setting forth the relevant background, the Court details its reasoning on each of these points – and the other points raised by Mr. Holmes – in the discussion below.

I.    RELEVANT BACKGROUND

For some time prior to 2007, Mr. Holmes and Mr. Portaluppi were housemates.  Mr. Holmes claims that he was effectively Mr. Portaluppi's landlord during that time and that he is owed unpaid rent and taxes from 2005.  On January 4, 2011, Mr. Portaluppi filed for bankruptcy under Chapter 7.  (Appellee's Amended Designation of Items for Record for Appeal [doc. # 3] (the "Appellee's Designation"), Attachment #1, Doc-79-1; *In re Portaluppi*, No. 11-30020 (the "Bankruptcy Action"), Docket No. 1.)  In his bankruptcy petition, Mr. Portaluppi listed Mr. Holmes as a creditor holding an unsecured non-priority claim against him.  (Appellee's Designation, Attachment #1, Doc-79-1 at 17.)  The creditor mailing matrix submitted with his petition listed the following addresses for Mr. Holmes:  William Holmes, 2519 Main Street, Rocky Hill, CT 06067 and Zuboff & Onore, LLP, Attn: Eric Onore, 344 Center Street, Manchester, CT 06040.  (*Id.* at 39.)  Mr. Onore had served as counsel for Mr. Holmes in a landlord/tenant case brought by Mr. Holmes against Mr. Portaluppi in the Hartford Housing

Session of the Connecticut Superior Court (the "State Court Action").  (Mem. of Decision & Order re: Objection to Discharge, dated Feb. 19, 2013 (the "Decision") at 3-4.)

On January 25, 2011, a creditors meeting was held at which the Chapter 7 trustee (the "Trustee") examined Mr. Portaluppi under oath pursuant to 11 U.S.C. § 341 (the "Trustee's Examination").  On January 26, 2011, the Trustee issued her report stating that all creditor claims would be discharged without payment.  (Decision at 4; Bankruptcy Action, Docket Entry dated Jan. 26, 2011.)  Mr. Holmes did not attend the Trustee's Examination.  The Court set March 28, 2011 as the deadline for filing any objections to the discharge.  (Decision at 4; Bankruptcy Action, Docket No. 7.)  On March 25, 2011, Mr. Holmes commenced an adversary proceeding challenging the discharge on several grounds.  (Decision at 5; *Holmes v. Portaluppi*, No. 11-3021 (the "Adversary Action"), Docket No. 1.)  The trial was held on December 15, 2011, and January 26, 2012.  Mr. Holmes and Mr. Portaluppi testified at the trial and both introduced documentary evidence into the record.  (Decision at 7.)  On February 19, 2012, the Bankruptcy Court issued a decision overruling Mr. Holmes's objections and granting him a Chapter 7 discharge.  (*See* Adversary Action, Docket No. 72.)  This appeal followed.

## II. STANDARD OF REVIEW

"The role of this court on appeal is necessarily narrow, and confined to an examination of the record below for clearly erroneous factual findings and errors of law."  *In re Flushing Mall Co.*, 7 B.R. 277, 283 (S.D.N.Y. 1980).  "A district court reviews the bankruptcy court's conclusions of law de novo and its findings of fact under a 'clearly erroneous' standard." *CadleRock J.V. II, L.P. v. Beaudoin (In re Beaudoin)*, 388 B.R. 6, 8-9 (D. Conn. 2008) (internal quotation marks and citation omitted).  Fed. R. Bankr. P. 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous,

and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  A finding of fact is clearly erroneous within the meaning of Rule 8013 when "although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made."  *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 772 (2d Cir.), *aff'd without opinion*, 242 F.3d 367 (2d Cir. 2000).  When mixed questions of law and fact are raised on appeal, they are presumptively subject to de novo review. *Id.*  (citation omitted).  The district court reviews the bankruptcy court's decision to admit or exclude evidence under an abuse of discretion standard."  *Daly v. Richardson (In re Richardson)*, No. 3:01-cv-2126 (DJS), 2004 U.S. Dist. LEXIS 19635, at *7 (D. Conn. Sept. 28, 2004) (citation omitted).  The same standard applies to the Bankruptcy Court's decision whether to order the Trustee to audit or examine the debtor.  *See* 11 U.S.C. § 727(c)(2) ("On request of a party in interest, the court *may* order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of the discharge.") (emphasis added); *In re Cavin*, No. 12-60927 (MHM), 2012 Bankr. LEXIS 5451, at *6 (Bankr. N.D. Ga. 2012) ("whether to order a Chapter 7 Trustee to investigate whether grounds exist to oppose discharge is within the court's discretion.").

### III. DISCUSSION

#### A. Mr. Portaluppi's Listing of a Former Address for Mr. Holmes on his Bankruptcy Petition

Mr. Holmes argues that the Bankruptcy Court erred in finding that Mr. Portaluppi did not intentionally list an obsolete address for Mr. Holmes on his bankruptcy petition to prevent Mr. Holmes from participating in the Trustee's Examination.  (*See* Statement of Issues on Appeal [doc. #10] at 1.)  Mr. Holmes argues that because Mr. Portaluppi was aware of the State Court Action, he could have contacted his attorney in that action to obtain Mr. Holmes's current

4

mailing address.  This, Mr. Holmes argues, is evidence that Mr. Portaluppi acted maliciously to keep him from participating in the Trustee's Examination.

First, the Court finds that this claim fails because Mr. Holmes cannot demonstrate that he has suffered any harm as a result of not attending the Trustee's Examination.  Mr. Holmes received actual notice of the bankruptcy proceeding in time to file the instant adversary action challenging the propriety of Mr. Portaluppi's discharge.  Through the adversary proceeding, Mr. Holmes has had the opportunity to assert any and all objections he may have to the discharge, obtain discovery from Mr. Portaluppi, present evidence in support of his positions, and cross-examine Mr. Portaluppi at trial.  Accordingly, Mr. Holmes has not shown, and cannot show, that he has suffered any prejudice from his failure to participate in the Trustee's Examination.  *See, e.g.*, *Bryn Mawr Trust Co. v. Ginter (In re Ginter)*, No. 93-10185 (DAS), 1994 Bankr. LEXIS 1594, at *7 (Bankr. E.D. Pa. Oct. 13, 1994) (no prejudice resulting from listing incorrect address for plaintiff on bankruptcy schedule because he had opportunity to challenge discharge through adversary proceeding).

Second, this claim fails because the Bankruptcy Court's findings concerning the use of an obsolete address for Mr. Holmes are not clearly erroneous.  Under 11 U.S.C. § 727(a)(4), the bankruptcy court shall grant the debtor a discharge, unless the debtor "knowingly or fraudulently, in or in connection with the case – (A) made a false oath or account."  "A statement is considered to have been made with knowledge of its falsity if it was known by the debtor to be false, made without belief in its truth, or made with reckless disregard for the truth."  *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (citation omitted).  A false statement resulting from ignorance or non-reckless carelessness is not a statement that is knowing and fraudulent. *See Sanderson v. Ptasinski (In re Ptasinski),* 290 B.R. 16, 23 (Bankr.

W.D.N.Y. 2003) (court may find intent to deceive in a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering" but not in mere ignorance or carelessness); *see also Kelly v. Kelly (In re Kelly)*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992) ("Denial of discharge is reserved for the truly pernicious debtor. Only where there is a preconceived scheme to thwart the rights of creditors and the process of this court, or such a cavalier disregard of duty as to constitute the legal equivalent of those motives, is the discharge withheld.") (citation omitted).

Here, the Bankruptcy Court held that it was "not persuaded" that Mr. Portaluppi's use of the incorrect address for Mr. Holmes "was anything other than an honest mistake on the Debtor's part." (Decision at 18.) Indeed, the Bankruptcy Court reasoned that "[i]n some sense of the word, it was not even a mistake. That is because the Debtor was required to use the Plaintiff's last known address and the Debtor used the last address for the Plaintiff *known to the Debtor at the time*." (*Id.* at 18 n.20) (emphasis in original).) The Bankruptcy Court also found that Mr. Portaluppi's listing of the address of Mr. Holmes's attorney in the State Court Action on his mailing matrix was "an additional attempt" to give Mr. Holmes notice of the bankruptcy proceeding. This, the Bankruptcy Court found, "further belies any fraudulent intent on the Debtor's part." Moreover, the Court reasoned that while Mr. Portaluppi could have contacted his attorney in the State Court Action to obtain Mr. Holmes's address, "on this record the court is not persuaded that the Debtor (or [his attorney]) had any reason to do so." (*Id.*)

The Court finds that this holding is not clearly erroneous. After listening to the testimony of both Mr. Portaluppi and Mr. Holmes, and observing their demeanor, the Bankruptcy Court credited Mr. Portaluppi's testimony that he sent the bankruptcy petition to Mr. Holmes at the last known address he had for him. (12/15/11 Hr'g Tr. at 94-96, 135.) The

6

Bankruptcy Court, as the trier of fact, is in a far better position to determine credibility than this Court, and this Court thus defers to the Bankruptcy Court's findings with regard to the credibility of the witnesses. *See, e.g.*, Fed. R. Bankr. P. 8013 ("due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."); *Cadle Co. v. DiFabio (In re DiFabio)*, 363 B.R. 343, 344 (D. Conn. 2007) ("it is apparent to the court that what the Appellant seeks to do is have the court substitute its evaluation of the evidence, including an assessment of the credibility of the witnesses who testified in the bankruptcy court proceeding, for that of the bankruptcy court. The applicable standard of review makes it clear that that is inappropriate."). Further, there is no evidence in the record that Mr. Portaluppi knew of Mr. Holmes's current address. (12/15/11 Hr'g Tr. at 83-87.) Mr. Holmes testified that he had no communications with Mr. Portaluppi concerning his new address, Mr. Portaluppi never sent him any correspondence to his new address or visited him there, and Mr. Holmes had no reason to believe that Mr. Portaluppi knew where he currently lived. (*Id.* at 86-87.) Thus, the Bankruptcy Court did not commit clear error in finding that Mr. Portaluppi made an honest mistake in using an obsolete address for Mr. Holmes and the Court affirms the Bankruptcy Court's ruling on this issue.

### B. Vehicle Transfers

Mr. Holmes argues that the Bankruptcy Court erred in finding that Mr. Portaluppi did not knowingly and fraudulently conceal the transfer of motor vehicles in his Bankruptcy Petition. (*See* Statement of Issues on Appeal at 2.) Although Mr. Holmes appears to be primarily challenging the Bankruptcy Court's findings concerning the Ford F350, given the broad language used by Mr. Holmes, the Court construes this claim for relief as also challenging the findings concerning the 1993 Lincoln, the 1994 Tahoe, and the 1971 El Camino.

### 1.     The Ford F350

With respect to the Ford F350, the Bankruptcy Court held that (1) no transfer occurred within the meaning of Section 727(a)(2)(A) or Item 10 of the Statement of Financial Affairs (the "SOFA") and, even if it had, (2) Mr. Holmes did not establish that Mr. Portaluppi acted with fraudulent intent as required under Sections 727(a)(2)(A) and 727(a)(4)(A).

To justify the denial of a discharge under Section 727(a)(2)(A), a creditor must establish that "(1) the debtor transferred . . . (2) his or her property, (3) within one year of the bankruptcy petition's filing, (4) with the intent to hinder, delay, or defraud a creditor." *Rowlands v. Fraser (In re Rowlands)*, 346 B.R. 279, 282 (B.A.P. 1st Cir. 2006) (internal quotation marks and citation omitted). Item 10 of the SOFA requires that a debtor "[l]ist all . . .property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case." (Appellee's Designation, Attachment #1, Doc-79-1 at 27.)

The Bankruptcy Court found that because Mr. Portaluppi did not own the Ford F350, he could not have transferred it within the meaning of Section 727(a)(2)(A) or Item 10 of the SOFA. At trial, Mr. Portaluppi testified that he registered the Ford F350 in Maine in his name and that in July 2010 he put the title in his friend's name. (*See* 12/15/11 Hr'g Tr. at 146-148, 159-161.) Under Maine law,[1] "[a] certificate of title . . . is prima facie evidence of the information appearing on it." Me. Rev. Stat. 29-A, § 658(4) (2013). Such a showing, however, may be rebutted by competent evidence. *See O'Donnell v. Chertok (In re Cork & Bagel Trading Co.),* 192 B.R. 789, 790 (Bankr. D. Me. 1995); *see also* Conn. Gen. Stat. § 14-174(d) ("A

---

[1] Focusing on the state of registration, the Bankruptcy Court applied Maine law to determine the issue of ownership, but stated in a footnote that Connecticut law would compel the same result. This Court agrees.

certificate of title issued by the commissioner is prima facie evidence of the facts appearing on it."); *Scalora v. Shaughnessy*, 151 Conn. 252, 254 (1963) ("Such registration is prima facie evidence – that is, it warrants, although it does not compel, a finding – of ownership of the vehicle described in the registration."). Here, although Mr. Portaluppi admitted that he held title to the vehicle (12/15/11 Hr'g Tr. at 146-47; 159-60; 1/26/12 Hr'g Tr. at 36, 39-40), the Bankruptcy Court "credit[ed] the Debtor's testimony that he did not own the Ford F350 (but that his friend did)," and found that such testimony was "sufficient to overcome the inference of ownership." (Decision at 19.) Further, the Bankruptcy Court held that even if the inference of ownership was not overcome, Mr. Holmes had not established the requisite fraudulent intent required under Sections 727(a)(2)(A) and 727(a)(4)(A). In so holding the Bankruptcy Court "credit[ed] the Debtor's testimony that he honestly believed and intended that his friend owned the Ford F350, not he, and that he honestly believed that no transfer occurred when the Debtor took his name off the title to the Ford 350 for no consideration in 2010." (*Id.* at 19-20.)[2]

Because this Court must give "due regard" to the Bankruptcy Court's assessments of credibility, and because Mr. Holmes has pointed to no evidence in the record that would support

---

[2] The Bankruptcy Court also specifically addressed Mr. Holmes's two general attacks on Mr. Portaluppi's credibility, namely that (1) he was allegedly terminated for embezzlement and fraud, and (2) he allegedly improperly transferred certain vehicles into his father's name during his divorce in 2003. The Bankruptcy Court dismissed the former claim because there was no evidence in the record to support it and reasoned that even if it were to consider the latter claim, "because of the remoteness in time the court gives such testimony little weight on the merits." The Court further noted that it "has had an opportunity to assess the Debtor's demeanor at trial and found him to be a credible witness notwithstanding the foregoing." (*Id.* at 19 n.23.) As noted, this Court must give deference to the Bankruptcy Court's credibility determinations – especially those based on the demeanor of witnesses.

a contrary finding, and the Court is unaware of any such evidence, the Court finds no error and affirms the findings of the Bankruptcy Court concerning the Ford F350.[3]

### 2. Other Vehicles

With respect to the 1993 Lincoln, the 1994 Tahoe, and the 1971 El Camino, the Bankruptcy Court held that Mr. Portaluppi's failure to disclose the transfer of these vehicles on his SOFA did not violate Section 727(a)(4)(A) because Mr. Holmes did not establish the requisite fraudulent intent. In so holding, the Bankruptcy Court "credit[ed] the Debtor's testimony that he misunderstood item 10 of the SOFA, and that his failure to include the Vehicle Transfers in his response to item 10 was an honest mistake." (Decision at 20.) Further, the Bankruptcy Court held that this testimony was "buttressed by the fact that the Debtor disclosed the Vehicle Transfers to the Trustee at the 341 Examination." (*Id.* at 20-21.) Mr. Holmes cites no evidence in the record that would lead to a contrary conclusion. Indeed, not only did Mr. Portaluppi testify about the transfers to the Trustee, but he also filed an Amended SOFA disclosing them. (Decision at 5; Appellee's Designation, Attachment #3, Doc-79-3 at 4.) Once again, the Bankruptcy Court's findings of fact are supported by the record, including the Court's credibility determinations, and are not clearly erroneous.

---

[3] Mr. Holmes also appears to challenge the Bankruptcy Court's refusal to admit into evidence certain documents that he allegedly obtained from the Maine Bureau of Motor Vehicles to demonstrate that Mr. Portaluppi held title to the Ford F350. (Statement of Issues on Appeal at 2(b); Appellant's Brief on Appeal/Designations [doc. # 2], Attachment #8, Doc 76-3; 1/26/12 Hr'g Tr. at 16-17, 26-31.) The Court has reviewed these documents and has determined that the Bankruptcy Court did not abuse its discretion in refusing to admit the evidence on hearsay grounds. Moreover, even if the court had erred, any such error would have been harmless because the court allowed questioning concerning the documents, Mr. Portaluppi admitted that his name was on the title of the vehicle, and the Bankruptcy Court found, as detailed above, that that fact was not dispositive of ownership. (12/15/11 Hr'g Tr. at 146-47; 159-60; 1/26/12 Hr'g Tr. at 36, 39-40.)

### C. Adequacy of Financial Records Relating to Motor Vehicles

Mr. Holmes argues that Mr. Portaluppi knowingly and fraudulently made a false oath by "attempting to conceal, failing to preserve a complete documentation of all motor vehicles purchased, transferred, or financed from person to person, or financial institution with a legally written transfer, or a bill of sale within the State of Connecticut, and the State of Maine." (*See* Brief on Appeal [doc. # 13] at 2.)[4]  It is uncontested that except for references in his bank statements to AutoTrader.com transactions, Mr. Portaluppi did not maintain any motor vehicle documents. (Decision at 21; 12/15/11 Hr'g Tr. at 156-59.)

To justify a denial of discharge based on a failure to preserve records under Section 727(A)(3), a creditor must demonstrate "that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 235 (2d Cir. 2006). Specifically, a creditor must show that the debtor "failed to create, maintain and/or preserve the complement of business and personal records that would be expected of a reasonably prudent person in the [d]ebtor's position." *In re Cacioli*, 285 B.R. 778, 782-83 (Bankr. D. Conn. 2002). Further,

> [i]f the occupation or business is of a kind in which persons normally would not keep books or records, failure by the debtor so to do does not bar the discharge.  It has even been said that a business may be so small that no books or records are required to be kept, although it would seem that not the size of the business but its complexity fixes the bounds of the duty . . . .  Few consumer debtors maintain anything more than, at most, a collection of bills, receipts and canceled checks,

---

[4] Although Mr. Holmes failed to designate this issue in his Statement of the Issues, because the parties briefed the issue, the Court will address it on this appeal. *See, e.g.*, *Gold Force Int'l, Ltd. v. Official Comm. Of Unsecured Creditors of Cyberrebate.com, Inc.*, No. 03-cv-5982 (JG), 2004 U.S. Dist. LEXIS 2089, at * (E.D.N.Y. Feb. 10, 2014) (considering issue in bankruptcy appeal where appellant did not designate the issue, but addressed it in his brief); *In re Cohoes Indus. Terminal, Inc.*, 90 B.R. 67, 70 (S.D.N.Y. 1988) (same).

and, absent a sudden and large dissipation of assets, a discharge should not be denied in a typical consumer bankruptcy case due to a lack of books or records.

6 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 727.03(3)(g) (16th ed. 2014).

The Bankruptcy Court held that Mr. Holmes failed to establish that Mr. Portaluppi failed to preserve motor vehicle records. The Bankruptcy Court reasoned that Mr. Portaluppi is a consumer debtor, that "[a]t most the record may suggest that he operated some small scale vehicle buying and selling business during the relevant period," and "[t]o the extent that such business existed, it was small – too small to require substantial record keeping." (Decision at 21.) The Court finds that the Bankruptcy Court committed no error in so holding. First, the evidence in the record confirms the Bankruptcy Court's conclusions. (*See, e.g.*, Appellee's Designation, Attachment #1, Doc-79-1 at 1, 24 (documenting that Mr. Portaluppi was a consumer debtor and a wage earner (sometimes unemployed) in 2009 and 2010); 12/15/11 Hr'g Tr. at 124-25, 156-59 (detailing Mr. Portaluppi's limited motor vehicle transactions.) Second, Mr. Holmes has cited no evidence that would support a contrary conclusion. Although Mr. Holmes argues that Mr. Portaluppi should have maintained copies of the bills of sale from his motor vehicle transactions, the Court is not persuaded that, under the circumstances, his failure to do so warrants a denial of discharge. (*See, e.g.*, 12/11/15 Hr'g Tr. at 124-25 (Mr. Portaluppi: "[w]hen I sell a vehicle, there is the title that I sign over to the person that's buying, and I give them the bill of sale for Connecticut that they need to register the vehicle. I don't have – I did not know that I needed to keep a record of the bill of sale.") Accordingly, the Court affirms the Bankruptcy Court's decision not to deny a discharge based on Mr. Portaluppi's failure to preserve records of his motor vehicle transactions.

**D.     Attorney Client Privilege**

Mr. Holmes argues that the Bankruptcy Court erred in finding that Mr. Portaluppi did not waive his attorney client privilege by inadvertently disclosing a privileged e-mail during the bankruptcy proceeding. (Statement of Issues on Appeal at 2-3.) Specifically, Mr. Portaluppi's counsel attached a copy of a privileged e-mail to one of his trial exhibits, a copy of which he had previously provided to Mr. Holmes in advance of trial. During trial, counsel discovered the error when he attempted to have the exhibit admitted into evidence. The Bankruptcy Court reviewed the e-mail in camera, ordered supplemental briefing, and held a hearing to address the issue. (12/15/11 Hr'g Tr. at 97-99; 1/26/12 Hr'g Tr. at 4-5.)

Under Fed. R. Evid. 502(b), the disclosure of a privileged document "does not operate as a waiver," if "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)."[5] *See also BNP Paribas Mortg. Corp. v. Bank of Am.*, No. 09-cv-9783 (RWS), 2013 U.S. Dist. LEXIS 75402, at *12 (S.D.N.Y. Mar. 7, 2013) (stating that the test requires consideration of the following factors: "'(1) the reasonableness of the precautions to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) an overreaching[sic] issue of fairness.'") (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985)).

---

[5] Fed. R. Civ. P. 26(b)(5)(B) provides: "If information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The producing party must preserve the information until the claim is resolved."

The Bankruptcy Court held that Mr. Portaluppi did not waive the privilege through the inadvertent disclosure.  The Bankruptcy Court found that the disputed e-mail was the only privileged document produced out of hundreds of pages of exhibits and that as soon as counsel for Mr. Portaluppi became aware of the error, he took action to correct it.  Further, the Bankruptcy Court found that Mr. Holmes admitted that he did not examine the document before trial, although it was produced to him some time earlier, and that he did not rely on it in preparing for trial.  Lastly, the Court reasoned that because the e-mail's "relevance is dubious, at best," the fairness prong weighs "distinctly in favor of nondisclosure."  (1/26/12 Hr'g Tr. at 11-12.)

The Court has reviewed the subject e-mail, which was filed under seal by Mr. Portaluppi as ordered by this Court, and the complete record in this case, and finds that the Bankruptcy Court did not abuse its discretion in finding no waiver of the attorney client privilege. *See, e.g.*, *Daly v. Richardson (In re Richardson)*, No. 3:01-cv-2126 (DJS), 2004 U.S. Dist. LEXIS 19635, at *7 (D. Conn. Sept. 28, 2004) (citation omitted) (evidentiary rulings reviewed under abuse of discretion standard).  This Court's review of the record confirms the Bankrupty Court's findings that Mr. Holmes admitted at trial that he never read the e-mail prior to its disclosure during the trial and did not rely on it in any way in his preparation for trial, and that counsel for Mr. Portaluppi immediately asked to retrieve the e-mail when he realized his error.  (12/15/11 Hr'g Tr. at 97-99, 109-11.)  Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in finding no waiver of the attorney client privilege.[6]

---

[6] Mr. Holmes further claims that Judge Weil stated that the e-mail "would have to be reviewed under camera by a judge of the 2nd Circuit," and requested documentation concerning same. (Statement of Issues on Appeal at 3.)  This Court has reviewed the record of the transcript from the bankruptcy proceeding and finds that it does not support Mr. Holmes's contention.  Although Judge Weil stated on the record at the first hearing that she was unaware whether there was any

14

### E. Denial of Request for Trustee to Investigate

Mr. Holmes also argues that the Bankruptcy Court erred in denying his request to have the Trustee audit or examine Mr. Portaluppi. (Statement of the Issues on Appeal at 4.) Under Section 727(c)(2), "[o]n request of a party in interest, the court may order the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge." Here, the Bankruptcy Court denied Mr. Holmes's request at the first hearing, reasoning that the Trustee had "conducted his investigation and decided that there was nothing there." (12/15/11 Hr'g Tr. at 6.)

This claim fails because Mr. Holmes cannot demonstrate that he has suffered any harm from the Bankruptcy Court's denial of his request. As discussed in detail above, Mr. Holmes had the opportunity to object to the discharge, and did so, through the filing of the instant adversary proceeding. In this proceeding, he was entitled to raise any issues that he believed should have been explored, or explored more fully, by the Trustee during her examination. Further, Mr. Holmes has had the opportunity to obtain discovery from Mr. Portaluppi, present evidence to support his positions, and cross-examine Mr. Portaluppi at trial. Accordingly, the Court finds that Mr. Holmes has suffered no prejudice resulting from the Bankruptcy Court's denial of his request. Moreover, even if he had, the Court finds that the Bankruptcy Court did not abuse its discretion in so holding. *See In re Cavin*, No. 12-60927 (MHM), 2012 Bankr. LEXIS 5451, at *6 (Bankr. N.D. Ga. 2012) ("whether to order a Chapter 7 Trustee to investigate whether grounds exist to oppose discharge is within the court's discretion."). Accordingly, the Court affirms the Bankruptcy Court's decision on this issue.

---

"binding authority in the Second Circuit" concerning the evidentiary issue, there was no in camera review of the e-mail by the Second Circuit and, accordingly, no documentation to produce. (12/15/11 Hr'g Tr. at 164; *see also* 1/26/12 Hr'g Tr. 5-9 (relying on Fed. R. Evid. 502(b) and district court decisions from Illinois and New York in deciding waiver issue).

### F. Issue Not Addressed Below

Finally, Mr. Holmes argues that Mr. Portaluppi concealed his income for the two years prior to the filing of his bankruptcy petition and that this is grounds for denying him a discharge in bankruptcy. However, Mr. Holmes chose not to pursue this issue on the record during the adversary proceeding before Judge Weil and no record was developed on the issue. (12/15/11 Hr'g Tr. at 34, 112.)[7] "To preserve an issue for appellate review by the district court, the issue must be raised sufficiently below such that the bankruptcy court can rule on the issue." *Sumpter v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 468 B.R. 603, 619 (S.D.N.Y. 2012); *see also Kendall v. Emps. Ret. Plan of Avon Prods.*, 561 F.3d 112, 123 (2d Cir. 2009) ("[T]he circumstances normally do not militate in favor of an exercise of discretion to address new arguments on appeal where those arguments were available to the parties below and they proffer no reason for their failure to raise the arguments below."); *Amalgamated Clothing & Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 72-73 (2d Cir. 1995) (declining to consider appellant's argument that was not raised in district court absent a showing of manifest injustice or extraordinary need). In this case, Mr. Holmes chose not to pursue this claim and the Bankruptcy Court did not rule on it. Because Mr. Holmes had every opportunity to pursue this claim below, has offered no reason for why he chose not to do so, and has made no showing of manifest injustice or extraordinary need, the Court will not consider this issue on appeal.

---

[7] At the outset of the trial, Judge Weil walked Mr. Holmes through his complaint paragraph by paragraph to determine which issues Mr. Holmes intended to pursue at trial. When Judge Weil specifically asked Mr. Holmes whether he intended to pursue his claim concerning concealed income (set forth in paragraph 4 of his complaint), Mr. Holmes responded that he did not intend to do so. (*See* 12/15/11 Hr'g Tr. at 34 (The Court: "Explain four to me. I mean, are you going to go forward with four? . . ." Mr. Holmes: "Again, that was more of a . . . brief." The Court: "All right. So what you will be addressing is the – false information, allegedly, on your . . . address." Mr. Holmes: "Correct." The Court: "Okay. And the alleged concealed transfers of motor vehicles." Mr. Holmes: "Correct.").)

## IV. CONCLUSION

For these reasons, this appeal is dismissed, and judgment shall enter in favor of Mr. Portaluppi. The clerk is directed to close this file.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut
June 6, 2014